## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MONICA ZAMBRANO,

       Plaintiff,

       vs.                                        CIV No. 1:20-1356 KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Plaintiff Monica Zambrano's ("Plaintiff's")

Motion to Reverse or Remand the Administrative Hearing (Doc. 21) with Supporting

Memorandum (Doc. 22), dated July 15, 2021, which challenges the determination of the

Commissioner of the Social Security Administration ("SSA") that she is not entitled to disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The

Commissioner responded to Plaintiff's Motion on October 20, 2021 (Doc. 26), and Plaintiff filed

a reply brief on November 5, 2021 (Doc. 27). With the consent of the parties to conduct

dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court

has considered the parties' filings and has thoroughly reviewed the administrative record. Having

done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT

Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this

opinion.

### I. PROCEDURAL POSTURE

On August 22, 2018, Plaintiff filed an application for disability insurance benefits. (*See*

Administrative Record ("AR") at 187-94). Plaintiff alleged that she became disabled in July

2017 due to PTSD, major depressive disorder, chronic knee pain, chronic back pain, osteoarthritis, spondylosis without myelopathy or radiculopathy lumbar, shingles, Bell's palsy, and fibromyalgia. (*Id.* at 354-55). Plaintiff's application was denied at the initial level (*id.* at 88-102), and at the reconsideration level (*id.* at 103-20). Plaintiff requested a hearing (*id.* at 135-36), which ALJ Jeffrey Holappa conducted on June 10, 2020 (see *id.* at 12-22, 32-85). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Mary Weber. (*Id.* at 32-85).

On July 2, 2020, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 12-22). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7-8), and on December 8, 2020, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On December 29, 2020, Plaintiff filed her Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may

neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

## B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA

has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 12-22). First, ALJ Holappa found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of July 6, 2017. (*See id.* at 14). The ALJ then found at step two that Plaintiff suffered from nonsevere impairments[1] as well as the following severe impairments:

---

[1] The ALJ acknowledged Plaintiff's diagnoses of gastroesophageal reflux disease, headaches, obesity, and Bell's palsy with shingles; however, he determined that these conditions did not cause more than minimal limitations in her ability to perform work activities. (AR at 15). Accordingly, he determined that these impairments were nonsevere. (*Id.*). As to Plaintiff's alleged disabling conditions of fibromyalgia and right

degenerative disc disease of the lumbar spine; osteoarthritis and chondromalacia of the left knee;

a right knee buckle handle lateral meniscus tear, status post meniscectomy; depression; anxiety;

and posttraumatic stress disorder. (*Id.* at 14). At step three, the ALJ concluded that Plaintiff did

not have an impairment or combination of impairments that met the criteria of listed impairments

under Appendix 1 of the SSA's regulations. (*Id.* at 15-16).

Moving to the next step, the ALJ reviewed the evidence of record, including medical

opinions and evidence from treating and consulting providers, prior administrative medical

findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 12-22). Having done so,

the ALJ concluded that for the relevant period, Plaintiff possessed an RFC to

> perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she is limited to
> occasional climbing of ramps and stairs, but no climbing of ladders or scaffolds;
> occasional balancing, stooping, kneeling, crouching, and crawling; frequent
> bilateral handling, fingering, and feeling; no exposure to unprotected heights or
> moving mechanical parts; understanding, remembering, and carrying out simple
> and detailed, but not complex tasks, further defined as semi-skilled (SVP 4 of [sic]
> below work), making commensurate semi-skilled work-related decisions; dealing
> with changes in a semi-skilled work setting; maintaining concentration, persistence,
> and pace for at least two-hour intervals; and occasional interactions with others,
> including supervisors, co-workers, and the general public.

(*Id.* at 17). Based on this RFC, the ALJ found that Plaintiff was unable to perform any past

relevant work during the relevant period. (*See id.* at 20).

Moving to step five, the ALJ determined that Plaintiff had been able to perform other

jobs existing in significant numbers in the national economy. (*See id.* at 20-21). The ALJ

therefore concluded that Plaintiff's work was not precluded by her RFC and that she was not

disabled. (*See id.* at 21-22).

---

elbow pain, the ALJ determined that they were not medically determinable impairments, as "there [was]
no evidence in the record that [Plaintiff] ha[d] ever been clinically diagnosed with fibromyalgia or an
underlying condition that would reasonably be expected to cause her right elbow pain." (*Id.*).

## IV.  DISCUSSION

Plaintiff contends that the ALJ inadequately evaluated the medical opinion evidence of Certified Physician Assistant Ruben Franco, Licensed Professional Clinical Counselor Mary Lampkin, and the state agency medical consultants (Doc. 22 at 8-13); that the ALJ failed to adequately explain his findings as to Plaintiff's mental impairments (*id.* at 13-16); and that the RFC did not conform to governing legal standards and was not supported by substantial evidence (*see id.* at 16-21). The Court finds that the ALJ failed to properly evaluate the opinions of PA-C Franco. Because a reevaluation of that source's opinions may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

PA-C Ruben Franco became Plaintiff's treating pain specialist in April 2018. (AR at 632-34). PA-C Franco saw Plaintiff every one to two months and, throughout her treatment, performed physical examinations, reviewed relevant records and findings, recommended physical therapy and range of motion exercises, prescribed and managed medications, including opiates, and referred Plaintiff for additional treatment. (*See* AR at 620-34, 1001-14, 1091-95).

On October 29, 2019, PA-C Franco completed a questionnaire, in which he opined that Plaintiff was unable to work on a full-time basis, that she would frequently be absent from work, that she could work only one to two hours per day and up to two to three hours per week, and that she would require 10 to 30-minute breaks on a frequent basis, depending on her symptoms. (*See* AR at 1049-53). He further opined that Plaintiff was limited to sitting for one hour at a time and up to two hours per eight-hour day, to standing or walking less than one hour at a time and up to two hours in an eight-hour day, and to lifting up to ten pounds occasionally. (AR at 1051).

Finally, he indicated that Plaintiff was restricted to less than occasional bilateral handling and manipulation. (AR at 1052).

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate PA-C Franco's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). Prior to March 27, 2017, the so-called "treating physician rule" provided that the opinions of treating sources were controlling so long as they were well-supported and not inconsistent with the other substantial evidence of record. *Watkins*, 350 F.3d at 1300; 20 C.F.R. § 404.1527(c)(2). The revised regulation, in contrast, does not assign any specific evidentiary weight or deference to the medical opinions of treating sources. *See* 20 C.F.R. § 404.1520c(a). Simply put, treating physicians' opinions are considered on equal footing with other sources' medical opinions. *Id.*

The revised regulation also imposes certain "articulation requirements" for an ALJ's evaluation of medical opinions. *See id*. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he considered each individual medical opinion; rather, he need only "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis." *Id.* § 404.1520c(b)(1). Second, an ALJ must consider five factors when evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)-(5); however, he is generally only required to *articulate* his consideration of two of those factors: supportability and consistency. *Id.* § 404.1520c(b)(2). "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." *Id*. Third and finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the

other most persuasive factors . . . for those medical opinions[,]" including the source's

relationship with their client, any specialization, and other factors that tend to support or

contradict the medical opinion. *Id.* §§ 404.1520c(b)(3); 404.1520c(c)(3)-(5).

While the revised regulation allows the ALJ some discretion in *how* he articulates his

findings on the persuasive value of medical opinion evidence, it provides no leeway as to

*whether* he articulates such findings as to each opinion. *See id*. § 404.1520c(b) (providing that

the ALJ "*will* articulate in [his] determination or decision how persuasive [he] find[s] all of the

medical opinions and all of the prior administrative medical findings in [the] case record")

(emphasis added). In other words, while an ALJ generally "is not required to discuss every piece

of evidence," *see Clifton*, 79 F.3d at 1009-10, the duty to address the persuasive value of *all*

medical opinion evidence of record—at least at the source level—is mandatory. *See id*.

Even so, the new regulation does not alter the standard of review. Thus, an ALJ's

persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other

evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes

mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation

omitted). As before, an ALJ must "consider all relevant evidence in the case record[,]" *Silva v*

*Saul*, No. 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R.

§§ 404.1520b, 416.920b), and must provide the Court "with a sufficient basis to determine that

appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165

(10th Cir. 2005) (quotation omitted).

Here, the ALJ did not outline PA-C Franco's opinions in his decision or otherwise

discuss the contents of his questionnaire. Instead, he merely cited the questionnaire and offered

the following broad conclusion: "I find unpersuasive the opinion of Ruben Fanco [sic], PA-C, in

that [Plaintiff] has less than sedentary limitations (Exhibit 17F), because this is clearly an overstatement of [her] limitations based on the objective medical evidence." (AR at 19).

Plaintiff submits that the ALJ failed to adequately explain how he considered the consistency and supportability factors as required by 20 C.F.R. § 404.1520c(b)(2). (Doc. 22 at 9-10). She maintains that he offered a "blanket statement" concluding that PA-C Franco's opinion was "unpersuasive," rather than an *explanation* of how he considered the requisite factors for determining persuasive value. (Doc. 27 at 3). Plaintiff faults the ALJ for failing to identify any specific evidence to support his conclusion and suggests that he "impermissibly superimposed his own lay opinion over that [of] a treating care provider." (Doc. 22 at 9) (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). Ultimately, she maintains that the ALJ erred "in failing to accord PA-C Franco's opinion significant or controlling weight." (Doc. 22 at 9).

Plaintiff's final argument is a confusing one given the revised regulation applicable to her claim. To the extent Plaintiff suggests that PA-C Franco's opinions were entitled to controlling or more significant weight on account of his status as a treating medical source, she is mistaken. Section 404.1520c, which Plaintiff concedes applies in this case, provides that ALJs "will not defer to or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical findings" about what a claimant can still do despite her limitations. 20 C.F.R. § 404.1520c(a). As noted above, the treating physician rule has no bearing on this case, and PA-C Franco is therefore not entitled to any special deference.

As to Plaintiff's other arguments, the Court agrees that a bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c. An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for

each medical source's opinions. *See id*. § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the "explanation must at least '[e]schew[] rote analysis and conclusory explanations [and] discuss . . . the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ." *Frazer v. Kijakazi*, No. 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (quoting *Pamela P. v. Saul*, 3:19-CV-575 DJS, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020)) (subsequent citations omitted).  Ultimately, the Court agrees with Plaintiff that the ALJ's analysis of PA-C Franco's opinions fails to pass muster.

First, the consistency factor calls for a comparison between the subject medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. Plaintiff submits that PA-C Franco's opinions were consistent with the evidence of other medical sources, including radiographic studies, physical examinations, restrictions imposed by Plaintiff's former employer, and failed treatment attempts, including interspinous ligament and facet injections. (Doc. 22 at 10). However, the Court cannot reweigh the evidence as Plaintiff requests but is, instead, limited to evaluating the rationale offered by the ALJ to determine whether it conforms with the law and is supported by substantial evidence. *See Lax*, 489 F.3d at 1084.

As Plaintiff points out, the ALJ's discussion of Franco's opinions fails to identify, even in general terms, the "objective medical evidence" he considers to be at odds with PA-C Franco's opinions. Nor did the ALJ make any specific observations as to how PA-C Franco's opinions

were inconsistent with other evidence of record, other than to describe them as an "overstatement of [Plaintiff's] limitations." (*See* AR at 19). Such a bare conclusion hardly allows the Court to follow the ALJ's rationale. *See Frazer*, 2022 WL 682661, at *6 ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand.") (citing *Lobato v. Kijakazi*, No. 21-207 JB/KK, 2022 WL 500395, at *9 (D.N.M. Feb. 18, 2022); *Dwyer v. Saul*, Civ. No. 20-80 JFR, 2021 WL 1574965, at *11 (D.N.M. Apr. 22, 2021)).

For her part, the Commissioner maintains that "[t]he ALJ reasonably found [Franco's] extreme opinion unpersuasive because it was inconsistent with the record as a whole that showed only conservative treatment for Plaintiff's physical impairments and pain." (Doc. 26 at 17). Yet, the ALJ offered no such rationale in the context of his evaluation of Franco's opinions. Although he explained earlier in his decision that Plaintiff's conservative treatment undermined her own symptom allegations (AR at 18), he did not offer conservative treatment as a specific reason for rejecting Franco's opinions (*see* AR at 19). The Commissioner may not rationalize the ALJ's rejection of PA-C Franco's opinions *post hoc*. Indeed, "[j]udicial review is limited to the reasons stated in the ALJ's decision . . . ." *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

At most, the ALJ juxtaposed his finding that PA-C Franco's opinions were "unpersuasive" with his finding that the state agency consultants' opinions were "persuasive." (*See* AR at 19). In doing so, he observed that PA-C Franco effectively found Plaintiff able to perform "less than sedentary limitations," whereas the state agency medical consultants found "light exertional limitations with additional postural non-exertional limitations." (*Id.*). Confusingly, though, the ALJ also concluded that the state agency consultants' opinions were

"consistent with the evidence from *all* medical and non-medical sources." (*Id*.) (emphasis

added). But surely the ALJ did not mean to say that the state agency consultants' opinions were

consistent with Franco's medical opinion evidence, having just implied the opposite.

Moreover, the rationale offered by the ALJ for his persuasiveness evaluation of PA-C

Franco's opinions appears to be at odds with the sequential evaluation process. An ALJ is

charged with assessing a claimant's RFC – that is, the most they can do despite limitations –

based upon *all* of the relevant evidence, including medical opinion evidence. *See* 20 C.F.R.

§ 404.1545. Here, it appears the ALJ inverted the required analysis, determining *first* that

Plaintiff had an RFC to perform work at a higher-than-sedentary level and then using this finding

as a basis for discounting Franco's opinion. (*See* AR at 19) (explaining that he found

"unpersuasive the opinion of [PA-C Franco], in that the claimant has less than sedentary

limitations . . . , because this is clearly an overstatement of the claimant's limitations"). As

Plaintiff puts it, the ALJ effectively "turned the analysis on its head." (Doc. 22 at 9). On the

whole, the Court concludes that the ALJ's articulation of his consistency analysis fails to suffice

under 20 C.F.R. § 404.1520c.

The Court finds the ALJ's treatment of the supportability factor equally problematic. The

supportability factor examines how well a medical source supported his own opinions with

"objective medical evidence" and "supporting explanations." *Id.* § 404.1520c(c)(1). "The more

relevant the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical

opinions . . . will be." *Id*.

Here, the ALJ failed to explicitly consider how PA-C Franco supported or failed to

support his own opinions with either objective medical evidence or supporting explanations. For

instance, he did not address the explanation offered by PA-C Franco in his questionnaire for how his diagnoses were supported by "objective findings." (*See* AR at 1049). He likewise failed to discuss the degree to which PA-C Franco's physical examination findings or the results of Plaintiff's 2018 MRIs supported PA-C Franco's opinions. Notably, PA-C Franco's treatment notes documented a decreased range of motion of Plaintiff's lumbar spine, back pain with facet loading maneuvers, a positive straight leg raise test, tenderness to palpitation along the medial and lateral joint line of the knee, and pain and crepitus with range of motion in her right knee. (*See, e.g.,* AR at 631, 1094). Further, his treatment notes frequently recited Plaintiff's February 2018 MRI findings, which, as PA-C Franco detailed, showed a central disc bulge and protrusion at L5-S1 with left foraminal narrowing, mild degenerative disc disease at L4-5, chondromalacia patella, minor articular cartilaginous irregularity in the central weightbearing surface of the femoral condyle, and a complex popliteal fossa cyst measuring up to 9.3 cm. (*See, e.g.*, AR at 626-27, 633-34, 1091-94).  But, again, the ALJ did not identify the objective medical evidence, whether from PA-C Franco's reports or otherwise, that rendered PA-C Franco's opinions "overstatements." In short, the ALJ did not cite *any* contrary objective medical evidence in the context of his evaluation of PA-C Franco's opinions. (*See* AR at 19).

Beyond his conclusory finding that PA-C Franco's opinions were "unpersuasive," the ALJ mentioned PA-C Franco by name only one other time in his decision. Despite PA-C Franco serving as Plaintiff's pain specialist and treating her for *physical* ailments, the ALJ observed that, on February 20, 2020, "Ruben Franco, PA-C, advised that [Plaintiff] was alert with a normal mood upon examination." (AR at 18 (citing AR at 1094)).

Additionally, without mentioning PA-C Franco by name, the ALJ referenced a statement found in PA-C Franco's April 16, 2020 treatment records, in which Plaintiff "advised that she

felt like aqua therapy helped to relieve her back and knee pain, but she had to stop attending due to COVID-19." (AR at 19 (citing AR at 1091)). The ALJ provided no further discussion of the effectiveness or availability of aqua therapy; nor did he indicate that Plaintiff's statement contradicted PA-C Franco's opinions.

Finally, in the ALJ's summary of medical records, he observed that "[o]n August 28, 2018, Thomas Whalen, M.D., advised that although [Plaintiff] exhibited limitations in range of motion of her lumbar spine, back pain with facet loading maneuvers, and tenderness to palpitation along the medial and lateral joint line of the knee, she exhibited full range of motion of the knee with only mild crepitus." (AR at 18 (citing AR at 1007-08)). Although the ALJ attributed these physical examination findings to Dr. Whalen, the Court's review of the record reveals that PA-C Franco, instead, was the medical source who made these findings. (*See* AR at 1007-09). Even if the ALJ had correctly attributed them to PA-C Franco, though, they largely confirm or at least fail to contradict limitations related to Plaintiff's lumbar back impairment. Most critically, the ALJ himself did not determine or directly suggest that these findings failed to support the opinions offered by PA-C Franco in his questionnaire. To the extent that there may be legitimate reasons for discounting PA-C Franco's opinions found within his own records, the ALJ simply failed to articulate with sufficient specificity those reasons.

In sum, the Court cannot say that that the ALJ provided an adequate explanation allowing it to follow his reasoning or that he communicated how he considered the consistency and supportability of PA-C Franco's opinions. Indeed, the ALJ's failure to offer substantive discussion of the consistency and supportability factors effectively hinders the Court's ability to determine whether substantial evidence supports his persuasiveness analysis.

The failure to adequately articulate the consistency and supportability factors only constitutes "harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (citation omitted). In such a case, the claimant is not prejudiced because the outcome would have remained the same even if the medical opinion was determined to be persuasive. *See id.* at 579. Here, though, PA-C Franco's assessment of Plaintiff's work-related abilities and the ALJ's RFC determination are inconsistent in that the RFC determination fails to account for many of the functional limitations PA-C Franco assessed. (*Compare* AR at 19, *with* AR at 1048-53). Had the ALJ found PA-C Franco's opinions persuasive, he would have assigned Plaintiff a more restrictive RFC, which in turn would have resulted in different findings at steps four and five. The ALJ's failure to adequately explain his rejection of PA-C Franco's opinions was not harmless. Remand is required for the proper consideration of PA-C Franco's opinions pursuant to 20 C.F.R. § 404.1520c.

## V. CONCLUSION

The ALJ erred in his review of Plaintiff's application for disability insurance benefits by failing to adequately evaluate medical opinion evidence in accordance with controlling legal standards. Accordingly, Plaintiff's Motion to Reverse or Remand the Administrative Decision (Doc. 21) is **GRANTED**, and the Court remands this case back to the Social Security Administration for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**